### CARGILL INCORPORATED, Yankton, South Dakota, Plaintiff and Appellant,

v.

### ELLIOTT FARMS, INC., Defendant and Appellee.

#### Nos. 14430, 14431.

Supreme Court of South Dakota.

Considered on Briefs Sept. 12, 1984.

Decided Feb. 20, 1985.

Michael J. Shaffer of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff and appellant.

Steven M. Johnson of Brady, Kabeiseman, Reade & Johnson, Yankton, for defendant and appellee; Celia Miner of Brady, Kabeiseman, Reade & Johnson, Yankton, on brief.

TICE, Circuit Judge.

This is an appeal from a final judgment in a products liability action in which the defendant, Elliott Farms, Inc., received a jury verdict of $166,363.00 on its counterclaim and denied plaintiff, Cargill, Inc., recovery on its complaint. We affirm the judgment.

Elliott Farms, Inc., a family farm corporation involved in cattle feeding, is princi-

pally owned by Robert Elliott, Sr. and his son Robert Elliott, Jr. (hereinafter, references to Elliott as an individual will be to Robert Elliott, Sr.) Appellant, Cargill, Inc., is a large feed manufacturer. For a number of years, Elliott had purchased approximately $250,000.00 of cattle feed annually. Beginning in June 1981, Elliott received several loads of feed that contained a large number of fines. Fines can be dangerous in cattle feeding in that they separate the feed components. As a result, the cattle may eat too much of the feed component or potentially toxic substances such as urea or rumensin and as a result can develop acidosis or suffer rumen system damage.

In June, 1981, Elliott contacted Cargill and complained about the poor quality of the feed. Cargill's sales representative informed Elliott that he should use the feed and assured Elliott that the next loads would be of a better quality.

After noticing that the cattle were not eating properly, Elliott again contacted Cargill near the end of June, 1981. Cargill's representative viewed the feed and admitted the fines problem. Because Elliott was assured the next feed loads would be better, he ordered additional loads. However, the loads had even more excessive fines than the previous loads. As a result, Elliott once again contacted Cargill and was assured that the pellets would subsequently firm up.

On approximately July 17, 1981, the July 14 Cargill delivery came out of Elliott's bin. However, the pellets had not firmed up. Cargill's representative examined the feed and found that the fines exceeded 60%; this was 55% over the industry standard.

Elliott's problem with the cattle worsened; the cattle backed off the feed and were dying. There is evidence that 19 cattle died and other cattle were brought to market late, that the fines problem caused extra labor and feed losses, and that Elliott's total damages were $182,363.00.

Because Elliott refused to pay for the feed loads from June 1 to July 14, 1981, Cargill commenced this action based upon an alleged open account debt in the amount of $14,382.33. Elliott counterclaimed, alleging that the feed was defective and unreasonably dangerous, and that the various warranties were breached. Elliott also claimed that Cargill had negligently manufactured and distributed the feed. Damages in excess of $240,000.00 were sought.

As indicated above, the jury found in favor of Elliott and against Cargill. Cargill's motion for a new trial or judgment notwithstanding the verdict was denied.

Cargill raises three issues on appeal: (1) There was insufficient evidence to sustain the jury award; (2) the trial court erred in permitting Elliott's expert to testify about the causes of the problems with its cattle; and (3) the trial court erred in reversing the order of closing arguments. By way of notice of review, Elliott challenges the trial court's refusal to grant it prejudgment interest.

Cargill argues that the trial court should have granted its motion for a new trial as there was insufficient evidence to support the jury verdict. An order denying a new trial will not be overturned without a clear showing of an abuse of discretion. *Basin Electric Power Cooperative v. Gosch*, 90 S.D. 222, 240 N.W.2d 96, 98 (1976). "A new trial is not justified on the basis of insufficiency of the evidence to support the verdict unless it appears that the evidence was conflicting on several controlling points and that the findings of fact are unreasonable, arbitrary, and unsupported in light of the other evidentiary facts proven." *Klug v. Keller Industries, Inc.*, 328 N.W.2d 847, 849 (S.D.1982).

"[T]he mere presence of a conflict in the evidence does not license a trial court to weigh conflicting evidence and substitute its own judgment for that of the jury ...." *Lewis v. Storms*, 290 N.W.2d 494, 497 (S.D.1980).

Viewing the testimony in a light most favorable to Elliott, the evidence was clearly sufficient to sustain the jury verdict. *Klug, supra.* Cargill's theory was that the death and illness was a result of

the change of rations. However, the evidence was undisputed that the feed was defective. The jury heard all the evidence, including the testimony from both parties' experts. Finally, the jury heard extensive testimony relating to damages. The verdict was within the scope of Elliott's evidence. Accordingly, the trial court did not abuse its discretion in denying the motion for a new trial.

Cargill next contends that the trial court erred in permitting Dr. Buck, Elliott's expert, to testify concerning the cause of the problems with Elliott's cattle. Dr. Buck, who is a doctor of veterinary medicine and who holds a master of science degree in veterinary toxicology, is a professor of pharmacology and toxicology at the University of Illinois College of Veterinary Medicine. Certain tests were performed under his direction at the University of Illinois laboratory on a sample of the feed in question. Confirmation testing was done at the National Veterinarian Services Laboratory at the National Animal Disease Center in Ames, Iowa.

"A witness is an expert witness and is qualified to give expert testimony if the judge finds that to perceive, know or understand the matter concerning which the witness is to testify, requires special knowledge, skill, experience or training and that the witness has the requisite special knowledge, skill, experience, or training." Restatement Model Code of Evidence, § 402[.]

*State v. Riiff,* 73 S.D. 467, 475, 44 N.W.2d 126, 130 (1950).

This ruling will not be disturbed on appeal absent a clear showing of abuse of discretion. *Morin v. Chicago and Northwestern Railway System,* 87 S.D. 447, 451, 209 N.W.2d 895, 897 (1973). Without question Dr. Buck qualified as an expert witness. There is sufficient factual testimony in the record to form the foundation for his opinion. Further, Dr. Buck was properly allowed to testify concerning the ultimate issue of causation without having performed any tests on rumen and tissue samples from the dead animals.

*Pearson v. Franklin Laboratories, Inc.,* 254 N.W.2d 133, 140 (S.D.1977). Therefore, the trial court did not abuse its discretion in admitting Dr. Buck's testimony.

Finally, Cargill argues that the trial court erred in reversing the order of closing arguments to permit Elliott to argue first and last. SDCL 15–14–1 states in part: "In civil jury cases the jury shall first be selected and sworn, and the trial shall then proceed in the following order, subject to the right of the presiding judge, for good cause shown, otherwise to direct the order of the statements, proof, and argument[.]"

Cargill's case in chief lasted a few minutes. The remainder of the week-long trial consisted mainly of Elliott's counterclaim. As a result, the trial court reversed the order of closing arguments after Elliott made a showing of good cause. Further, trial courts can alter the order of closing arguments over the objection of one of the parties. *Laney v. Ingalls,* 5 S.D. 183, 190, 58 N.W. 572, 574 (1894). In that the major thrust of the case involved Elliott's counterclaim, the trial court did not abuse its discretion in reversing the order of argument.

Elliott contends that the trial court erred in refusing to grant it prejudgment interest. Where damages are not certain until fixed by the trier of fact, the prevailing party is not entitled to prejudgment interest. SDCL 21–1–11; *Dougherty v. Beckman,* 347 N.W.2d 587, 590 (S.D.1984); *Beka v. Lithium Corp. of America,* 77 S.D. 370, 375, 92 N.W.2d 156, 159 (1958). Elliott's damages were not certain or capable of being certain until the jury rendered its verdict. Thus, Elliott is not entitled to prejudgment interest.

The judgment is affirmed.

WOLLMAN, MORGAN and HENDERSON, JJ., and WUEST, Acting as Supreme Court Justice, concur.

TICE, Circuit Judge, sitting for FOSHEIM, C.J., disqualified.