930 F.2d 1333
 PLM INVESTMENT MANAGEMENT, INC., Appellee,
v.
DAKOTA SOUTHERN RAILWAY COMPANY, Appellant.
George A. Huff, IV, individually and as President and
General Manager of Dakota Southern Railway Company.
PLM INVESTMENT MANAGEMENT, INC., Appellant,
v.
DAKOTA SOUTHERN RAILWAY COMPANY, Appellee.
George A. Huff, IV, individually and as President and
General Manager of Dakota Southern Railway Company.
PLM INVESTMENT MANAGEMENT, INC., Appellee,
v.
DAKOTA SOUTHERN RAILWAY COMPANY, Appellant.
George A. Huff, IV, individually and as President and
General Manager of Dakota Southern Railway Company.
 Nos. 90-5333I.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 14, 1991.
Decided April 17, 1991.
Rehearing and Rehearing En Banc Denied
May 29, 1991.
 
 Albert Steven Fox, Chamberlain, S.D., for appellant.
 Reed Masmussen, Aberdeen, S.D., for appellee.
 Before MAGILL and BEAM, Circuit Judges, and HEANEY, Senior Circuit Judge.
 MAGILL, Circuit Judge.
 
 
 1
 In this breach of contract diversity case, the Dakota Southern Railway Company contends that the district court erred in awarding PLM Investment Management, Inc., prejudgment interest on its jury verdict. PLM cross-appeals, arguing that the district court erred in refusing to grant its motion for judgment notwithstanding the verdict on the railroad's successful counterclaim. We affirm in part and reverse in part.
 
 I.
 
 2
 On October 28, 1985, PLM Investment Management, Inc., (PLM) leased 125 railroad cars to the Dakota Southern Railway Company (Dakota Southern). Dakota Southern received the cars in November 1985. The lease agreement provided that whenever Dakota Southern rented the cars to other railroads, those railroads were to make per diem rental payments to PLM. The lease agreement further provided that PLM would keep 70% of these per diem earnings and remit 30% to Dakota Southern.
 
 
 3
 The lease agreement also contained a termination clause. If PLM's monthly per diem earnings averaged less than $190 per car, PLM could terminate the lease on thirty days' written notice to Dakota Southern. The agreement also provided that on receipt of such notice, Dakota Southern could avoid termination by paying PLM in cash the difference between what the cars had earned and what PLM expected, i.e., $190/month per car.
 
 
 4
 On December 9, 1986, PLM verbally informed Dakota Southern that it desired to terminate the agreement because the leased cars were not earning $190/month. Dakota Southern did not offer to make up PLM's losses in cash to avoid termination, as the agreement permitted. On December 11, PLM received the per diem payments for the previous July and August. PLM withheld the 30% remittance from Dakota Southern because it anticipated that the railroad would not be able to fulfill its responsibilities on termination of the lease, including cleaning and restenciling the cars. As a result, PLM retained $2400 that belonged to Dakota Southern. On December 30, PLM terminated the agreement and sent Dakota Southern a letter informing the railroad where and how the cars should be returned. Without protest, Dakota Southern returned most of the cars by mid-January of 1987.
 
 
 5
 Later, when Dakota Southern discovered PLM's withholding, it instructed the railroads that were paying the per diem to PLM to pay Dakota Southern instead. PLM then withheld more payments from Dakota Southern. Eventually, Dakota Southern had withheld $99,098 from PLM, and PLM had withheld $31,213 from Dakota Southern.
 
 
 6
 PLM sued Dakota Southern in federal district court, alleging that Dakota Southern had wrongfully refused to remit 70% of the per diem payments it had collected and requesting as damages the amount of the unremitted per diem payments. Dakota Southern counterclaimed on the same ground and asked as damages the per diem payments PLM had withheld. Dakota Southern also counterclaimed for damages of at least $150,000 resulting from PLM's improper termination of the lease and for unreimbursed car repair expenses.
 
 
 7
 Before trial, the per diem payments Dakota Southern withheld from PLM were calculated as $99,098. The per diem payments PLM withheld from Dakota Southern were calculated as $31,213 on the day of trial. The jury found that both parties had wrongfully refused to remit per diem payments. The jury awarded PLM $99,098 for the per diem payments Dakota Southern had withheld, and awarded Dakota Southern $150,000 for the per diem payments PLM had withheld plus other damages for breach. The jury expressly rejected PLM's defense that Dakota Southern had waived its right to enforce the termination procedures by returning the cars without protest after the improper notice. The district court then granted both parties' motions for prejudgment interest, awarding PLM $45,110, and Dakota Southern $14,402.[1] PLM filed a motion for judgment notwithstanding the verdict on the waiver issue. The district court denied the motion and both parties appealed.
 
 II.
 A. Prejudgment Interest
 
 8
 Dakota Southern argues that the district court erred in awarding PLM prejudgment interest. Dakota Southern bases its claim on S.D. Codified Laws Ann. Sec. 21-1-11 (1987), which states, in pertinent part: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day." Under South Dakota law, "the prevailing party is entitled to prejudgment interest only if damages are certain or capable of being made certain by calculation.... Prejudgment interest is not to be awarded if the damages are uncertain until determined by the trier of fact." First Nat'l Bank of Minneapolis v. Kehn Ranch, 394 N.W.2d 709, 717 (S.D.1986) (citations omitted); accord Hepper v. Triple U Enters., Inc., 388 N.W.2d 525, 531 (S.D.1986). Dakota Southern contends that because its counterclaim against PLM operated as an offset, PLM's damages were not ascertainable until after the jury verdict and thus that PLM was not entitled to interest under Sec. 21-1-11.
 
 
 9
 We believe that the district court properly awarded PLM prejudgment interest. Lacking in this case is the one fact crucial to those South Dakota cases that have disallowed prejudgment interest because the damages were not ascertainable until after the jury verdict--the presence of an offset. Without doubt, if the district court had ordered that PLM's damages be offset by Dakota Southern's damages, PLM's damages would have been uncertain until the jury awarded damages to Dakota Southern. As the South Dakota Supreme Court explained in Kehn Ranch: "The trial court ordered the amount due the Bank to be offset by any damages due the Kehns. Consequently, the Bank's damages were not certain or capable of being made certain until the jury returned its verdict." 394 N.W.2d at 717; accord Hepper, 388 N.W.2d at 531 (holding that prejudgment interest is improper where the trial court ordered the sums due the prevailing party to be offset by damages due the other party). In this case, however, it is clear from the record that the district court did not order PLM's damages to be offset by Dakota Southern's award. Before the jury returned its verdict, PLM's damages were ascertainable; it was entitled to 70% of the per diem payments withheld by Dakota Southern, or $99,098. Therefore, under the plain language of Sec. 21-1-11 and South Dakota case law,[2] the district court properly awarded PLM prejudgment interest.
 
 
 10
 Dakota Southern next argues that the district court erred in awarding PLM prejudgment interest because the equities were on its side. The railroad contends that because the jury awarded it $150,000 and only awarded PLM $99,098, equity requires that PLM be denied prejudgment interest. This argument is without merit. Dakota Southern has adduced no relevant case law to support its argument, and Sec. 21-1-11 on its face requires no equitable balancing. The jury in this case found that both parties wrongfully withheld monies due the other, and therefore, prejudgment interest was appropriate. As the South Dakota Supreme Court has observed: "The fundamental purpose of an award of prejudgment interest is to do justice to one who has suffered a loss at the hands of another person. That person should be charged interest upon the sum he or she refuses to tender to the injured party." Jensen Ranch, Inc. v. Marsden, 440 N.W.2d 762, 767 (S.D.1989).
 
 B. Waiver
 
 11
 PLM argues on cross-appeal that the district court erred in failing to grant its motion for judgment notwithstanding the verdict (JNOV) on the waiver issue. Central to PLM's appeal is its position that the jury's $150,000 verdict for Dakota Southern rests on a faulty premise. PLM concedes the correctness of $31,213 of the award for the per diem payments it withheld, but challenges the remaining $118,787 as damages for improper termination of the contract. PLM argues that Dakota Southern is not entitled to damages for breach of contract based on improper termination because the railroad waived its right to written notice of termination as a matter of law.
 
 
 12
 The South Dakota Supreme Court has described waiver as follows:
 
 
 13
 The doctrine of waiver is applicable where one in possession of any right, whether conferred by law or by contract, and with full knowledge of the material facts, does or forebears the doing of something inconsistent with the exercise of the right. To support the defense of waiver, there must be a showing of a clear, unequivocal and decisive act or acts showing an intention to relinquish the existing right.
 
 
 14
 Norwest Bank S.D. v. Venners, 440 N.W.2d 774, 775 (S.D.1989) (quoting Subsurfco, Inc. v. B-Y Water Dist., 337 N.W.2d 448, 456 (S.D.1983)). The court further explained: "Waiver may be either express or implied. If implied, it arises from an act or acts which clearly are inconsistent with the right to be exercised." Id. It is an implied waiver that PLM insists occurred in this case.
 
 
 15
 PLM argues that Dakota Southern waived the notice requirement by returning the cars without protest after PLM's December 30 termination letter. PLM contends that the written notification of termination was a right that Dakota Southern possessed, and that returning the cars was inconsistent with enforcing that right. Because Dakota Southern waived the right to proper notice of termination, PLM asserts, the railroad is not entitled to damages resulting from the improper termination.
 
 
 16
 Dakota Southern argues in response that a jury issue concerning waiver existed that supports the district court's denial of the JNOV. The issue involves whether the Dakota Southern representative who received the termination letter and returned the cars had full knowledge of the material facts. Dakota Southern contends that the representative was not totally aware of the terms of the leasing agreement and did not know his choices when presented with the letter.
 
 
 17
 We agree with PLM that Dakota Southern waived its objection to PLM's improper termination as a matter of law. The Dakota Southern representative who received the termination letter was George Huff, the railroad's president and general manager. Dakota Southern's claim that Huff did not understand the lease and was not aware of his rights is rebutted by the undisputed facts that Huff was involved in negotiating the agreement and was specifically informed of the termination procedures. More importantly, Huff signed the lease agreement. As a signer, Huff is chargeable with knowledge of the agreement's contents. Because as a matter of law Huff knew of the termination procedure, we also conclude that as a matter of law he waived Dakota Southern's right to proper notification.
 
 
 18
 The problem we now face is how to address the jury's $150,000 verdict in Dakota Southern's favor. Clearly, $31,213 of the verdict still stands as the wrongfully withheld remittance. The remaining $118,787 is approximately what Dakota Southern claimed as damages resulting from its having to hire other railroad cars. The railroad, however, also claimed it was due $8,580 for unreimbursed car repairs under the contract. This claim was not dependent on PLM's improperly terminating the agreement. The jury's $150,000 general verdict did not specify the components of the award.
 
 
 19
 We do not believe, however, that remanding this case for another trial on the issue of unreimbursed car repair expenses is necessary. In its motion for JNOV, one of PLM's proposals was for the court to award it $99,098 and to award Dakota Southern $39,793, the sum of the withheld remittance plus the repair expenses. Because we believe such a disposition is equitable and results in savings for the parties and the court, we direct the district court accordingly.
 
 III.
 
 20
 The district court's judgment is affirmed in part and reversed in part. We direct the district court to enter judgment in the amount of $99,098.83 in favor of PLM and in the amount of $39,793.72 in favor of Dakota Southern.