**In re Francis A. SANDO and Nancy E. Sando, his wife.**

**Civ. A. No. 83–1348.**

United States District Court,
E.D. Pennsylvania.

June 3, 1983.

Steven M. Dranoff, Philadelphia, Pa., for debtors.

Paul F. D'Emilio, Bala Cynwyd, Pa., for creditor.

### MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Debtors in bankruptcy No. 81–3897G Francis A. Sando and Nancy E. Sando ("Sando"), who have petitioned for bankruptcy pursuant to Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301, *et seq.,* have appealed from an Order of the bankruptcy court denying their motion for a stay of a sheriff's sale contemplated by Main Line Federal Savings and Loan ("Main Line"), creditor of Sando and dismissing the debtors' Chapter 13 petition with prejudice. For the reasons hereinafter set forth, this Court will enter an Order affirming the bankruptcy court.

Sando filed for Chapter 13 bankruptcy on September 22, 1981. This filing operated as an automatic stay of an action by a creditor to collect amounts owed the creditor by Sando (*see* 11 U.S.C. § 362(a)). In 1977, Sando had obtained a mortgage of $106,-000.00 from Main Line but subsequently defaulted on the loan. Main Line sued Sando in Montgomery County Court of Common Pleas and obtained a judgment of $109,795.47 in 1980. Main Line was therefore prevented from taking action to enforce this judgment because of the automatic stay. Main Line then filed a complaint in the bankruptcy court seeking a modification of the automatic stay (a procedure available to creditors pursuant to 11 U.S.C. § 362(d)). Counsel for Main Line and Sando negotiated a settlement of their dispute and entered into a stipulation which was approved by the bankruptcy court on April 30, 1982.

The stipulation of the parties provided for monthly repayments of Sando's obligation to Main Line at the rate of $1,756.00 per month. Paragraph 2 of the stipulation of April 30, 1982 provides:

In the event that said payment is not received on or before the 30th of each and every month, and thereafter said fact is certified in writing to the Court, then the provisions of the Automatic Stay under [11 U.S.C. Section] 362(a) of the Bankruptcy Code shall immediately cease, terminate, and be vacated, and Plaintiff [Main Line] is hereby granted leave to proceed to execution upon its Judgment in the Common Pleas Court of Montgomery County No. 80–18445 [regarding Sando's loan obligation to Main Line], without any further notice or demand whatsoever.

Sando defaulted by not making the regular monthly payments required by the stipulation for August and September, 1982. Thereupon, Main Line certified this deficiency in writing to the bankruptcy court and commenced to proceed with execution. Sando's counsel filed a motion with the bankruptcy court asking that Main Line be stayed from proceeding upon the judgment. In its Order of November 12, 1982, the bankruptcy court denied the motion for a stay. On October 21, 1982, the standing trustee in bankruptcy for Chapter 13 petitions filed a motion to have the debtors' petition dismissed with prejudice due to Sando's failure to pay to the trustee the scheduled payments required by the debtors' payment plan (*see* 11 U.S.C. §§ 1321–1330). A hearing was held on this motion on December 13, 1982. At the conclusion of the hearing, the Honorable Emil Goldhaber

granted the trustee's motion to dismiss with prejudice the Chapter 13 petition.

A review of the transcript of the hearing indicates that Judge Goldhaber also reconsidered and affirmed his Order of November 12, 1982, denying Sando's motion to stay Main Line's execution on its judgment. Therefore, this Court will treat Sando's appeal from the bankruptcy court's December 13, 1982 Order as an appeal of both the order denying the stay and an appeal of the order granting the trustee's motion to dismiss the Chapter 13 proceeding.

■ The record shows that the parties entered into a voluntary and legally binding stipulation which provided that Sando make specified monthly payments of $1,756.00 to Main Line. Sando failed to comply with the stipulation by neglecting to make said payments, thus permitting Main Line to exercise its rights pursuant to Paragraph 2 of the stipulation. As Judge Goldhaber observed at the December 13 hearing, the stipulation is "crystal clear" (N.T. at 13) and Main Line's conduct did not exceed its rights under the stipulation. Sando's only defense is the contention that he is without funds because certain tenants in the building which he purchased through the loan from Main Line have not paid rent to Sando in timely fashion. This, however, is no excuse for Sando's failure to fulfill his obligations under the stipulation. By entering into the stipulation, Sando waived the protections offered to a debtor under the automatic stay of the Bankruptcy Code. Stipulations voluntarily entered into by parties to litigation will be enforced by a court unless the stipulation violates public policy or other extenuating circumstances exist. *See United States v. Montgomery,* 620 F.2d 753 (10th Cir.1980), *cert. denied,* 449 U.S. 882, 101 S.Ct. 232, 66 L.Ed.2d 106 (1980). Similarly, a court will not intervene to halt a party's actions done in accordance with a stipulation. *See Sellersville Savings and Loan Association v. Patrick J. Kelly,* 29 B.R. 1016 (E.D.Pa.1983). The bankruptcy court was not in error in denying Sando's motion for a stay.

■ The bankruptcy court was also not in error in granting the trustee's motion to dismiss the Chapter 13 petition. The Bankruptcy Code provides that a Chapter 13 debtor must make payments to the standing Chapter 13 trustee in accordance with the debtor's Chapter 13 plan in order to receive the benefits and protection of Chapter 13 bankruptcy. Sando failed to make these payments for two months. At this point, the trustee moved for dismissal of the petition with prejudice. At the December 13 hearing, Sando offered no justification for the failure to pay the trustee but did offer to then pay the trustee the amount owed to that date (N.T. at 2–3). Judge Goldhaber did not find this offer to be a sufficient basis for denying the trustee's motion. The bankruptcy court acted within its discretion in not permitting Sando to attempt to comply with the statute and the debtor's plan at such a late juncture. *See* 11 U.S.C. §§ 1307(c)(2); 1307(c)(5); 1326(a)(2); 1325(b); *In re Gates,* 256 F.Supp. 1 (D.Wis. 1966); *In re Petro,* 18 B.R. 566 (D.Pa. Bkrtcy.1982); *In re Fredrickson,* 5 B.R. 199 (D.Fla.Bkrtcy.1980); *In re Centineo,* 4 B.R. 654 (D.Neb.1980). Sando's obligation to make regular payments in accordance with the Chapter 13 trustee is clear and unequivocal. Furthermore, the record suggests that the debtors' rectification of the situation might well have been only temporary, since the debtors have frequently failed to comply with the terms of the Bankruptcy Code; *see* Designated Record on Appeal ¶ 5 (Original debtor's scheduled debt exceeded statutory amount; in the instant appeal, the debtor has failed to file a timely brief as required by the bankruptcy rules). Therefore, the bankruptcy court, in granting the trustee's motion to dismiss the Chapter 13 petition, specifically made the dismissal with prejudice so that Sando could not file a second Chapter 13 petition for the purpose of triggering the automatic stay and frustrating Main Line's attempt to execute on its judgment pursuant to the stipulation (see N.T. at 28–28a). The bankruptcy court specifically stated that Sando could seek to amend the dismissal order for the

purpose of making it "without prejudice" after Main Line had completed its pursuit of creditor's remedies (N.T. at 28). The granting of dismissal with prejudice was a proper exercise of discretion by the bankruptcy court. An appropriate order will be accordingly entered.