**In re Anthony K. KALMANOWICZ and Margaret S. Kalmanowicz, Debtors.**

**Anthony K. Kalmanowicz, Margaret S. Kalmanowicz and Frances Kalmanowicz, Complainants, and,**

**Mark J. Conway, Esquire, Chapter 7 Trustee,**

**v.**

**Third National Bank and Trust Company of Scranton, (now by merger) Corestates Bank, and Pocono Downs, Inc., Respondents.**

**No. Civ. 98–973.**

United States District Court, M.D. Pennsylvania.

Aug. 21, 1998.

---

James J. Haggerty, Kingston, PA, Mark J. Conway, Scranton, PA, for Plaintiff.

Andrew J. Katsock, III, Scranton, PA, Donna A. Walsh, Scranton, PA, for Defendant.

## MEMORANDUM and ORDER

NEALON, Senior District Judge.

The appellants, Anthony K. Kalmanowicz, Margaret S. Kalmanowicz, and Frances Kalmanowicz, debtors/complainants, (hereinafter debtors) filed this appeal from a ruling of the Bankruptcy Court dismissing debtors' adversary proceeding in which they sought to overturn a Sheriff's Sale on their mortgage with the Third National Bank (Bank)[1] and subsequent sale of the premises to Pocono Downs, Inc. (Pocono Downs). Jurisdiction of this court is based on 28 U.S.C. § 158(a)(1).

### I. Background

The parties have submitted a Stipulation of Facts which, in pertinent part, is set forth here.

1. Anthony K. Kalmanowicz and Margaret S. Kalmanowicz filed a voluntary Chapter 11 Petition on October 8, 1992. Under 11 U.S.C. § 362(e), the filing of this petition automatically stayed any foreclosure action against real property owned by the debtors.

2. Prior to filing the petition, debtors owned an interest in common with Frances J. Kalmanowicz (mother of Anthony K. Kalmanowicz) in real estate adjacent to Pocono Downs at 1258 Highway 315, Plains Township, Pennsylvania. (Collec-

---

1. The Third National Bank has merged with, and is now known as, the Corestates Bank.

tively debtors and Frances Kalmanowicz are referred to as the "Kalmanowiczs").

3. On or about December 11, 1987, the Kalmanowiczs had executed and delivered a promissory note in the sum of $350,000 secured by a mortgage on the property to the Bank.

4. Debtors defaulted in making their payments under the promissory note and mortgage.

5. On or about February 14, 1992, the Bank filed a judgment in Luzerne County Court of Common Pleas to No. 573–L of 1992 against the Kalmanowiczs, which judgment had originally been entered in the Court of Common Pleas of Wyoming County.

6. On June 17, 1993, the Bank filed a motion for relief from the automatic stay in the Bankruptcy Court in the Kalmanowicz Bankruptcy.

7. A preliminary hearing on the relief motion was held on July 2, 1993, and a final hearing was scheduled for August 2, 1993.

8. At the August 2, 1993, final hearing, counsel for the Bank represented to the court that an agreement had been reached whereby the stay would be lifted but the Bank would not pursue execution provided the debtor would satisfy certain conditions including monthly payments on the debt of $4,500 per month commencing on October 1, 1993. Debtor's counsel stated that his client agreed with the terms as orally recited by counsel for the Bank and it was agreed that the stipulation would be reduced to writing and submitted to the court within 15 days. The Bankruptcy Court then issued a proceeding memorandum/order of court marking the relief motion "settled-stip to be filed within 15 days."

9. On or about August 11, 1993, David Gregory, counsel for the Bank, mailed a Stipulation to Entry of Order Granting Motion for Relief from the Automatic Stay to Robert Scovell, counsel for the debtors.

10. On or about August 11, 1993, David Gregory, counsel for the Bank, mailed a Stipulated Order Granting Motion for Relief from the Automatic Stay for Judge Thomas' signature, to Robert Scovell, counsel for the debtors.

11. No written response was received by the Bank or its counsel to David Gregory's correspondence of August 11, 1993 to Robert Scovell.

12. David Gregory, counsel for the Bank, mailed a proposed stipulation to Entry of Order Granting Motion for Relief from the Automatic Stay to Robert Scovell, counsel for the debtors on or about August 24, 1993.

13. David Gregory, counsel for the Bank, mailed a Stipulated Order Granting Motion for Relief from the Automatic Stay for Judge Thomas' signature, to Robert Scovell, counsel for the debtors on or about August 24, 1993.

14. No written response was received by the Bank or its counsel to David Gregory's correspondence of August 24, 1993.

15. Neither debtors nor Robert J. Scovell signed either the August 11 or August 24, 1993 Stipulation to Entry of Order Granting Motion for Relief from the Automatic Stay sent by Gregory.

16. Debtors did not comply with the provisions placed on the record at the August 2, 1993 hearing.

17. Neither debtors nor debtors' counsel requested that the Bankruptcy Court enter an order continuing the Automatic Stay at or any time after the August 2, 1993 hearing.

18. The Bankruptcy Court did not enter any Order continuing the Automatic Stay at or any time after the August 2, 1993 hearing.

19. Neither debtors nor debtors' counsel filed any motions with regard to the Automatic Stay at or any time after the August 2, 1993 hearing.

20. On or about October 6, 1993 the Bank filed a complaint in Luzerne County court for confession of judgment, Case No. 2687–L of 1993, against the Kalmanowiczs in the amount of $359,280.77.

21. On October 28, 1993, the Bank, through its attorneys, filed a praecipe for a writ of execution in the case 573–L of 1992, and obtained a writ of execution.

22. On or about October 27, 1993, the Bank, through its counsel, mailed a writ of execution in Case No. 573–L–1992 to the Luzerne County Sheriff along with a check for $2,000.

23. The execution papers filed by the Bank in Case 573–L–1992 were marked by the Prothonotary's office to execution docket 485–1993–ED.

24. On or about November 2, 1993, the Bank, through its counsel, mailed letters to the debtors' creditors via certified or first class U.S. mail notifying them of a Sheriff's Sale of the debtors' property scheduled for January 28, 1994.

25. On December 15, 1993, in Luzerne County Court of Common Pleas, the Kalmanowiczs filed a petition to open and/or strike the judgment in cases No. 2687–L–1993 and filed a counterclaim.

26. The Bank filed an answer to the Petition to Strike and/or Open Judgment by Confession and Counterclaim in case 2687–L of 1993 on or about January 7, 1994.

27. The Bank's answer in 2687–L of 1993 filed on about January 7, 1994, claimed that the Bank obtained relief from the automatic stay as set forth in the Bankruptcy Court transcript of August 2, 1993.

28. Attached to the Bank's answer in 2687–L of 1993 filed on or about January 7, 1994, was a transcript of the August 2, 1993 bankruptcy court hearing, the August 24, 1993 proposed Stipulation signed by David Gregory but unsigned by any representative of the debtors, an unexecuted notice of stipulation, and the unexecuted stipulated order for the signature of Judge Thomas.

29. On or about January 7, 1994 the Bank filed a motion in the bankruptcy court to convert the debtors' case to Chapter 7 or dismiss the debtors' case.

30. Attached to the Bank's motion to convert to Chapter 7 or dismiss the debtors' case filed on or about January 7, 1994, was the August 2, 1993 hearing transcript, the August 24, 1993 proposed Stipulation executed by David Gregory but unexecuted by any representative of the debtors, the unexecuted notice of stipulation, and the unexecuted stipulated order for Judge Thomas's signature.

31. On or about January 12, 1994, the Bank filed in the Bankruptcy court the "Ex Parte motion of Third National Bank and Trust Company for adopted of transcript of August 2, 1993 and Stipulation as an Order."

32. On or about January 13, 1994, the Bankruptcy Court set a hearing on the Bank's "Ex Parte Motion for Adoption of Transcript of August 2, 1993 and Stipulation as an Order" for February 16, 1994, with answers due by January 28, 1994. Neither debtors nor debtors' counsel filed any answer to same.

33. On January 14, 1994, in Luzerne County Court, the Kalmanowiczs filed a petition to open and/or strike the judgment in case No. 573–L of 1992.

34. On January 14, 1994, the Kalmanowiczs also filed a complaint in equity and motion for preliminary injunction against the Bank to No. 2–E of 1994 in Luzerne County Court.

35. The following occurred on or about January 19, 1994:

a) the Bank, by its counsel, filed a memorandum of law in case 2E of 1994 stating that "all parties expressly consented" to relief from the automatic stay on August 2, 1993;

b) the Bank, by its counsel, filed an answer to the complaint in the case 2E

of 1994 stating that "stay relief was consented to" by the Bank and the debtors on August 2, 1993, and that the transcript of the August 2, 1993 hearing was attached to the answer;

c) the Bank, by its counsel, filed an answer to a petition to strike the judgment in case 573–L of 1992 stating that the parties "expressly consented" to relief from the automatic stay on August 2, 1993

36. The Luzerne County Court scheduled and held a hearing on the Kalmanowiczs' equity action on January 25, 1994, three (3) days before the Sheriff's Sale of the property scheduled for January 28, 1994.

37. On January 26, 1994, a stipulation was signed in Luzerne County court by representatives of the Bank and the debtors.

38. On January 26, 1994, the Honorable Ann H. Lokuta entered the January 26, 1994, stipulation as an Order.

39. The January 26, 1994, stipulation and January 26, 1994, order provided for a continuance of the January 28, 1994 Sheriff's Sale to June 3, 1994.

40. The stipulation signed in the Luzerne County court on January 26, 1994, recites that relief from the automatic stay was obtained on August 2, 1993.

41. A hearing in debtors' case was held in Bankruptcy Court on February 16, 1994.

42. Neither debtors nor debtors' counsel attended the hearing held in the Bankruptcy Court in the debtors' case on February 16, 1994.

43. On February 22, 1994, the Bankruptcy Court entered an Order scheduling the Bank's motion to convert the Chapter 11 proceeding to a Chapter 7 proceeding for the first available hearing date after June 3, 1994.

44. On June 3, 1994, the Sheriff's Sale of the property pursuant to the execution process for the 1992 County Court judgment took place as scheduled.

45. No bids were made by any entity or individual other than the Bank for the Kalmanowicz building at the June 3, 1994 Sheriff's Sale.

46. Pursuant to Judge Lokuta's order, no advertising was done informing the general public that the Kalmanowicz building would be subject to Sheriff's Sale on June 3, 1994. Advertising had been done for the January 28, 1994 Sheriff's Sale in both the Luzerne Legal Register and the Citizens' Voice.

47. Neither the Kalmanowiczs nor any of their counsel asked for reconsideration of, or appealed from, the January 26, 1994 order, the February 22, 1994 order, or the order converting the Chapter 11 proceeding to a Chapter 7 proceeding.

48. Kalmanowiczs were aware of Pennsylvania Department of Revenue liens encumbering the property as of June 3, 1994 for failure to make withholding tax payments.

49. On or about February 1, 1995, an offer signed by Joseph Banks was faxed to Sean Sands offering $250,000.00 for the Kalmanowicz property.

50. On or about February 24, 1995, Pocono Downs mailed five original agreements signed by it to purchase the Kalmanowicz building from the Bank to Sean Sands.

51. The Bank executed a deed to Pocono Downs for the Kalmanowicz building on March 31, 1995.

52. On June 29, 1994, the Kalmanowiczs, through counsel (other than Robert J. Scovell), Hourigan, Kluger, Spohrer & Quinn, P.C. ("Hourigan Kluger"), filed a document entitled "Objection and Exception to Proposed Distribution and Conduct of Sheriff's Sale" ("Objection").

53. Neither the Kalmanowiczs nor Hourigan Kluger requested in writing that the Luzerne County Court or its President

Judge schedule a hearing on the objections.

54. On October 5, 1994, the Sheriff delivered and recorded a deed for the property in favor of the Bank ("Sheriff's Deed").

55. On March 29, 1995, the Kalmanowiczs filed a Petition for Preliminary Injunction ("March 29, 1995 Petition") in County Court in equity action No. 2–E of 1994, in an attempt to prevent a sale of the property to Pocono Downs from the Bank.

56. On March 29, 1995, the Kalmanowiczs filed a Praecipe for Lis Pendens in County Court in equity action No. 2–E of 1994 in order to affect the marketability of the property.

57. On April 3, 1995, the Honorable Michael T. Conahan of the County Court ("Judge Conahan") heard oral argument on the March 29, 1995 Petition. Counsel for Pocono Downs, Attorneys Chariton and Schwager, were present at the argument.

58. On April 6, 1995, Judge Conahan denied and dismissed the March 29, 1995 Petition and dissolved the Lis Pendens.

59. On April 7, 1995, the Bank conveyed the property to · Pocono Downs ("Conveyance") by virtue of a deed dated March 31, 1995 and recorded April 7, 1995, showing date stamp of 2:11 PM and reciting consideration of $318,500.

60. On April 7, 1995, after the deed evidencing the Conveyance had been recorded in the Office of the Recorder of Deeds in and for Luzerne County, and in response to an oral request on behalf of discharged debtors, the Bankruptcy Court issued a Temporary Restraining Order ("TRO") which, by its terms, sought to prevent the Bank from thereafter transferring the property.

In further elaboration of the background, the exact language of acceptance of the oral agreement should be noted. At the August 2, 1993, hearing, after the Bank's counsel outlined the agreement, including relief from the Stay, the following exchange occurred between the court and debtors' counsel:

"THE COURT: Is that your agreement, ... Mr. Scovel?

MR. SCOVEL: We've agreed to that, yes. My ... my client has agreed to that." (Tr. p. 236).

Thereafter, on May 11, 1998, after hearing arguments by the parties, the Bankruptcy Court granted the Bank's motion dismiss the adversary proceeding.

## II. *The Issues*

The issues on appeal, as identified by appellant, are:

1. Whether the Bankruptcy Court erred as a matter of law in dismissing the adversary proceeding and holding that the automatic stay protecting the debtors expired on or about August 17, 1993 and not on or after February 24, 1994, as debtors contend?

2. Whether the Bankruptcy Court erred in failing to disqualify the Bank's counsel for conflict of interest and status as witnesses?

It is debtors' contention that the Automatic Stay resulting from the filing of a Chapter XI proceeding on October 11, 1992, continued in effect until February 22, 1994, when the Bankruptcy Judge adopted a stipulation and order of the Luzerne County Court which "granted Relief from the Automatic Stay...." Any entitlement to relief from the Automatic Stay due to the Bank's request pursuant to 11 U.S.C. § 362(e),[2] according to debtors, was waived by the Bank when it continued to partici-

---

2. 11 U.S.C. § 362(e) provides:
"Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property for the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination...."

pate in Bankruptcy and Luzerne County Court proceedings after the Stay would have expired. Debtors argue further that any action taken by the Bank prior to February 22, 1994, to execute on the mortgage was in violation of the Automatic Stay thereby rendering the Sheriff's sale and subsequent conveyance to Pocono Downs null and void.

The Bank, on the other hand, contends that the Bankruptcy Court properly ruled that the Bank temporarily waived the time frame contained in 11 U.S.C. § 362(e) by virtue of the oral agreement between the Bank and the debtors reached at the final hearing on August 2, 1993, which extended the Automatic Stay to August 17, 1993, when a Stipulation of the parties memorializing the agreement was to be submitted. Thus, the Bank asserts, the waiver ceased on August 17, 1993. Pocono Downs advances a separate argument by maintaining that, notwithstanding the oral agreement, the Automatic Stay terminated as a matter of law thirty (30) days after the final hearing on August 2, 1993, inasmuch as the Bankruptcy Court did not affirmatively order a continuance of the Stay. In so arguing, Pocono Downs also claims that the implied waiver attributed to the Bank by the Bankruptcy Court was limited to the Bank's agreement to a specific time frame to reduce the agreement to writing which was erased when the court concluded that the debtors were required to take some action to continue the Stay prior to August 17, 1993.

Subsequently, in their Reply Brief, debtors presented a different scenario and asserted that the key starting date for the purposes of § 362(e) was June 17, 1993, when the Motion for Relief from the Automatic Stay was filed and not the August 2, 1993, date used by the Bankruptcy Court. Debtors contend further that, by agreeing at the preliminary hearing on July 2, 1993, to a final hearing beyond the thirty (30) day period, the Bank waived relief under § 362(e).

The issues have been fully briefed and the appeal is in posture for decision. For the reasons that follow, the appeal will be dismissed.

### III. *The Ruling of the Bankruptcy Court*

Before addressing the issues, the precise ruling of the Bankruptcy Court should be set forth.

The Bankruptcy Judge concluded that the representations of the parties at the August 2, 1993, hearing that an agreement had been reached and that a stipulation would be filed within 15 days was

> "... inconsistent with a perpetual waiver of the time frame for 362(e). I believe that was a warning to Debtor's counsel and to Debtor, that if the agreement wasn't going to be filed within 15 days, that something had to be done to continue the Automatic Stay."

> "Having found that implied waiver, [by the Bank] and having found that the waiver only continued up through August 17th, it would appear that the Stay was, in effect, lifted with regard to any actions occurring thereafter." (Tr. p. 62).

Thus, the court concluded that there was no reason why the Bank should have been precluded from proceeding to execute on its judgment.

### IV. *Discussion*

■ The purpose underlying § 362(e) was emphasized in *In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693 (3d Cir.1989), wherein the court stated:

> "... to prevent unnecessary delays and adverse effects on the bankrupt estate's assets and the rights of secured creditors which had historically been occasioned by inaction of the bankruptcy courts, the Code also provides stringent time constraints in which a court must hold hearings and issue orders respecting the continuation of the automatic stay. 11 U.S.C.A. § 362(e) and Bank-

ruptcy Rule 400(a)(2). A violation of these time constraints results in automatic termination of the stay.."

█ The court observed further that these time constraints are intended to insure that the automatic stay is not continued indefinitely merely due to the inaction of the bankruptcy court. Moreover, the stay expires unless the bankruptcy court denies the motion for relief from the stay or orders the stay continued pending its final decision. In the present case there was neither an order denying the motion nor an order continuing the stay.

It should be noted initially that, if the debtors had lived up to their end of the bargain, the stipulation would have been filed, the motion dismissed, and the case closed. Consequently, if there had been a waiver it may have been by the debtors and not the Bank. This was the conclusion in the case of *In re Sando*, 30 B.R. 474 (E.D.Pa.1983) where a stipulation, similar to the one at bar, was entered into under which execution on a mortgage would not be undertaken provided the debtor made regular monthly payments. The debtor subsequently defaulted on his promise to make the required payments. In refusing to stay execution on the judgment, the district court determined that "(b)y entering into the stipulation, [debtor] waived the protections offered to a debtor under the automatic stay of the Bankruptcy Code. Stipulations voluntarily entered into by parties to litigation will be enforced by a court unless the stipulation violates public policy or other extenuating circumstances exist." *Id.*, at 476. *See also B.O.S.S. Partners I v. Tucker*, 37 B.R. 348 (Bankr.M.D.Fla.1984) (A stipulation freely entered into by the parties regarding a stay is binding and operates as a waiver by the debtor of any right to obtain protection from the court against proceedings instituted by a secured party for the purposes of enforcing its security interest.)

█ Nevertheless, debtors challenge the Bankruptcy Court's findings and maintain that when the parties reported the case as settled on August 2, 1993, there no longer was a motion to lift the Stay because "the matter had been settled." Doc. 6, p. 11. According to debtors, if there was no motion extant, then the thirty (30) day limitation for court action in § 362(e) did not apply. However, if "the matter had been settled" it was because the parties had reached an oral agreement under which the Stay was to be lifted and a stipulation filed. But, although a binding agreement between the parties had been reached, the motion would appear as unresolved on the record until the stipulation was filed. Therefore, as to the debtors, the benefits of the Automatic Stay were extinguished either by the oral agreement disposing of the motion or by the operation of § 362(e) if the motion had not been acted upon. Debtors should not be able to agree to lift the Stay, then refrain from complying with the promise to file the stipulation memorializing the oral agreement and still claim the protection of the Automatic Stay until the creditor filed another request and went through the same time-consuming process in obtaining relief. The Bankruptcy Court concluded that the waiver expired on August 17, 1993, when the stipulation was to be filed absent a request by debtors for an order extending the Stay. Any analogy to a common motion is flawed because the motion involved here, *viz.*, to lift the Automatic Stay, unlike a common motion, will automatically be granted unless acted upon within the time frame of thirty (30) days. Knowing this consequence, it would have behooved the debtors to seek a continuance of the Stay before that time period lapsed.

█ As previously mentioned, debtors now assert in their Reply Brief that the Bank's motion for relief from the stay was filed June 17, 1993, and, because a final hearing was not held within thirty (30) days, as required by § 362(e), the stay would have expired on July 17, 1993, were it not extended by waiver when the Bank agreed to and did attend the August 2, 1993, final hearing. Debtors argue further

that, even though they agreed to lift the stay at the August 2nd hearing, by later refusing to sign the stipulation formalizing the oral agreement for the record, the waiver remained in effect until February 24, 1994, when the Bankruptcy Court adopted the order of the Luzerne County Court of Common Pleas continuing the Sheriff's sale to June 3, 1994. In effect then, by repudiating their oral agreement, debtors would be able to shift the responsibility for this defalcation to the Bank, maintains the benefits of the stay, and claim waiver by the Bank because it took steps to enforce its security pursuant to the oral agreement.

The Bankruptcy Court limited the period of the implied waiver "up through August 17th" and not to any subsequent activity by the Bank. The contention that the Bank's counsel was not aware of § 362(e) is of no moment. One does not have to be aware of the stringent consequences of the code in order to gain the benefit of its provisions. The actions of the Bank, following the refusal of the debtors to discuss and execute the Stipulation, to implement the oral agreement thereby protecting and enforcing its note and mortgage are understandable. Debtors apparently believe that they can frustrate the oral agreement entered into at the August 2nd hearing by declining to confirm it in writing and then fault the Bank for attempting to execute on its mortgage which had been delayed temporarily by the automatic Stay. Several months passed until the Bank filed a complaint in Luzerne County Court for confession of judgment against the debtors. The oral agreement provided for a lifting of the Stay which was specifically agreed to by the debtors through their counsel, at the August 2nd hearing. The proposed stipulation was designed to place that agreement on record to resolve the motion and to close the proceeding. Reliance on the oral agreement, even though the stipulation was not filed because of the recalcitrance of the debtors, would not constitute a waiver by the Bank either as to the agreement itself or as to the automatic stay.

The cases cited by debtors in support of their position on waiver involve factual situations far different from the present case and involve circumstances less favorable to the creditors and more favorable to the debtors.

In *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306 (11th Cir.1982), the petition for relief from the automatic stay was filed on October 30, 1980, which would expire November 29 due to the failure to hold a preliminary hearing within thirty (30) days. The creditor, however, continued to trial on December 5, 1980, (6 days later) thus waiving any objection to the court's failure to hold the preliminary hearing within thirty (30) days. In the case of *In re Wilmette Partners,* 34 B.R. 958 (Bankr.N.D.Ill.1983), the court concluded that the creditor had implicitly waived the provisions of § 362(e) when it agreed to continue the hearing beyond the thirty (30) day time period *after being told that the stay would remain in effect until that time.* (emphasis supplied). A waiver was also found in *In re SeSide Company, Ltd.,* 155 B.R. 112 (E.D.Pa.1993), where, at the final hearing, the creditor agreed to a briefing schedule extending beyond ·the thirty (30) day period. The court predicated its finding of implicit waiver specifically on the fact that the creditor affirmatively agreed to the suggested briefing schedule at the final hearing. The creditor in *In re Small,* 38 B.R. 143 (Bankr.D.Md.1984), implicitly waived the thirty (30) day period from the date upon which the motion for relief from stay was filed by unilaterally serving discovery requests to which responses were due beyond the expiration of the time period.

The only affirmative act attributed to the Bank prior to the oral agreement was acquiescing to the request of the Bankruptcy Court to schedule the final hearing on August 2, 1993, thirty-one (31) days after the preliminary hearing on its motion. This acquiescence, plus agreeing to

the fifteen (15) days required for the execution of the stipulation, can hardly be compared to the creditors' actions and time delays in the cited cases. While the belated waiver argument by debtors identifying June 17, 1993, as the proper starting date was not specifically addressed by the Bankruptcy Court, it was implicitly rejected by the Court's finding of a limited waiver from August 2 to August 17, 1993. Thus, a conclusion that the Bank's mere acquiescence to the date of the final hearing would not constitute a waiver is fully justified under the circumstances of this case. The result would be that the Automatic Stay expired on July 17, 1993, because there was no waiver.

Even if the Bank waived relief under § 362(e) by agreeing to and attending the final hearing, the stay was lifted by agreement of the parties on August 2nd and was waived again only until August 17, 1993, when the Stipulation was to be filed. The same can be said of the alleged waiver of the expiration of the Stay on July 17, 1993, *viz.*, the parties agreed to lift the Stay on August 2, 1993, and this waiver did not extend beyond August 17, 1993. The debtors are in no position to protest the failure to give notice to the creditors as it was their action, or failure to act, that precluded a formal order implementing the stipulation.

Simply put, it is debtors' position that the Automatic Stay was due to expire on July 17, 1993, and the Bank would be free thereafter to proceed to enforce its note and mortgage. But, debtors claim that the Bank waived the lifting of the Stay and it continued in effect because the Bank agreed at the Preliminary Hearing on July 2, 1993, without any further court order continuing the Stay, to attend a final hearing on August 2, 1993, and subsequently circulate a stipulation formalizing the oral agreement reached on August 2, 1993. The end result of the Bank's willingness to attend the August 2nd final hearing and circulate a proposed stipulation, according to the debtors, was to resurrect and con-

tinue the original Automatic Stay. The Bankruptcy Court, however, ruled that the waiver terminated on August 17, 1993, when the Stipulation memorializing the oral agreement was to be filed. Thus, with the elimination of the only barrier to the enforcement of the lifting of the Stay, *viz.*, the waiver, the Bank was free to proceed to execute on the property. Furthermore, the Bankruptcy court's finding that no waiver existed except for the period from August 2, 1993, to August 17, 1993, is fully supportable factually and as a matter of law.

Finally, the denial of debtors' motion to disqualify the law firm of Nogi, Appleton, Weinberger and Wren, P.C., from representing the Bank in the Adversary Proceeding requires little comment. The debtors' allegations of impropriety on the part of the Nogi firm find no support in the record. In light of the disposition of this appeal, it is obvious that the excessively accusatory language of debtors' counsel is unfounded. The denial of the motion to disqualify will also be affirmed.